EXHIBIT B

493 494 49441S **H1-169**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
4043170628-183242665

3

49444

PRSRT FIRST-CLASS MAIL
U.S. POSTAGE PAID
Kalamazoo MI
36

TEMP-RETURN SERVICE REQUESTED

KATHLEEN M. BRICKLEY
**THIRTY-SIXTH JUDICIAL CIRCUIT**
Van Buren County Courthouse
212 East Paw Paw Street, Suite 201
Paw Paw, Michigan 49079

RETURN SERVICE REQUESTED

Ivory Shaver #221589
c/o Ernest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon Heights, MI 49444

STATE OF MICHIGAN
IN THE THIRTY-SIXTH CIRCUIT COURT FOR THE COUNTY OF VAN BUREN

| | |
|---|---|
| THE PEOPLE OF THE STATE OF MICHIGAN,<br>Plaintiff,<br><br>v<br><br>IVORY LEE SHAVER, #221589<br>Defendant. | HON. KATHLEEN M. BRICKLEY<br><br>Case No. 10-017030-FC<br><br>**ORDER DENYING<br>DEFENDANT'S MOTION FOR<br>RELIEF FROM JUDGMENT** |
| Assistant Attorney General<br>G. Mennen Williams Building, 7th Floor<br>525 W. Ottawa Street<br>P.O. Box 30212<br>Lansing, MI 48909 | IVORY SHAVER, #221589<br>Defendant in Pro Per<br>2500 S. Sheridan Drive<br>Muskegon Heights, MI 49444 |

At a session of said Court held in the Courthouse,
Village of Paw Paw, Michigan on June ᴄ̆ 8̆, 2017.

PRESENT: HONORABLE KATHLEEN M. BRICKLEY, CIRCUIT JUDGE

## INTRODUCTION

On June 9, 2011, a jury convicted Defendant Ivory Shaver of first-degree murder. He is currently serving with the Michigan Department of Corrections a sentence of life without the possibility of parole. Having exhausted his opportunities to appeal under subchapters 7.200 and 7.300 of the Michigan Court Rules, Defendant brings this Motion for Relief from Judgment pursuant to MCR 6.501, *et. seq.* He claims entitlement to relief on various grounds and requests an evidentiary hearing. For the reasons stated below, the court concludes that Defendant's motion and requests should be denied.

## STATEMENT OF FACTS

In 2010, Defendant Ivory Shaver and three co-defendants were tried by two juries for the killing of Deborah Boothby. On October 10, 2010, a jury convicted one of the co-defendants of first-degree murder and the other jury deadlocked on the charges against Defendant and the other co-defendants. In 2011, Defendant and the remaining two co-defendants were retried jointly with a single jury. On June 9, 2011, all were convicted of first-degree murder. The court thereafter sentenced Defendant to life without the possibility of parole.

STATE OF MICHIGAN

IN THE THIRTY-SIXTH CIRCUIT COURT FOR THE COUNTY OF VAN BUREN

| | |
|---|---|
| THE PEOPLE OF THE STATE OF MICHIGAN, | HON. KATHLEEN M. BRICKLEY |
| Plaintiff, | |
| | Case No. 10-017030-FC |
| v | |
| | |
| IVORY LEE SHAVER, #221589 | ORDER DENYING |
| Defendant. | DEFENDANT'S MOTION FOR |
| | RELIEF FROM JUDGMENT |

| | |
|---|---|
| BILL SCHUETTE | IVORY SHAVER, #221589 |
| Attorney General | Defendant in Pro Per |
| G. Mennen Williams Building, 7th Floor | 2500 S. Sheridan Drive |
| 525 W. Ottawa Street | Muskegon Heights, MI 49444 |
| P.O. Box 30212 | |
| Lansing, MI 48909 | |

At a session of said Court held in the Courthouse,
Village of Paw Paw, Michigan on June ____, 2017.

PRESENT: HONORABLE KATHLEEN M. BRICKLEY, CIRCUIT JUDGE

INTRODUCTION

On June 9, 2011, a jury convicted Defendant Ivory Shaver of first-degree murder. He is currently serving with the Michigan Department of Corrections a sentence of life without the possibility of parole. Having exhausted his opportunities to appeal under subchapters 7.200 and 7.300 of the Michigan Court Rules, Defendant brings this Motion for Relief from Judgment pursuant to MCR 6.501, *et. seq.* He claims entitlement to relief on various grounds and requests an evidentiary hearing. For the reasons stated below, the court concludes that Defendant's motion and requests should be denied.

STATEMENT OF FACTS

In 2010, Defendant Ivory Shaver and three co-defendants were tried by two juries for the killing of Deborah Boothby. On October 10, 2010, a jury convicted one of the co-defendants of first-degree murder and the other jury deadlocked on the charges against Defendant and the other co-defendants. In 2011, Defendant and the remaining two co-defendants were retried jointly with a single jury. On June 9, 2011, all were convicted of first-degree murder. The court thereafter sentenced Defendant to life without the possibility of parole.

Defendant and his two co-defendants at trial appealed their convictions as of right to the Michigan Court of Appeals. Their cases were consolidated on appeal. On September 12, 2013, in an unpublished opinion, the court affirmed the trial court's rulings and the jury's verdict in all three cases. Defendant asserts that, on November 15, 2013, the Michigan Supreme Court considered and denied his application for leave to appeal the judgment of the Court of Appeals. This court is unable to locate any record of that consideration and denial.

On May 24, 2017, Defendant filed with this court the instant Motion for Relief from Judgment pursuant to MCR 6.501, *et.seq*. Defendant requests in his motion an evidentiary hearing and a new trial.

## BASIS FOR REVIEW

Subchapter 6.500 of the Michigan Court Rules establishes the procedures for pursuing post-appeal relief from a criminal conviction. This subchapter is the exclusive means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process or when the conviction and sentence are not subject to appellate review under subchapter 7.200 or 7.300. MCR 6.501.

MCR 6.508(D) states that a defendant "has the burden of establishing entitlement to the relief requested." MCR 6.508(D) also sets out three procedural bars to relief from judgment. *People v McSwain*, 259 Mich App 654, 679; 676 NW2d 236 (2003). The court rule states that a court may not grant relief from judgment if: (1) the defendant's motion seeks relief from a judgment that is still subject to challenge on appeal under subchapters 7.200 or 7.300; (2) the defendant's motion alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under subchapter 6.500 "unless the defendant establishes that a retroactive change in the law has undermined the prior decision"; or (3) the defendant's motion "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter." MCR 6.508(D); *McSwain*, 259 Mich App at 679-680.

Relief may not be granted for non-jurisdictional claims under the third bar unless the defendant demonstrates both good cause for failure to have raised the grounds for relief on appeal or in a prior motion under the subchapter and actual prejudice from the alleged irregularities that support the claim for relief. MCR 6.508(D)(3); *People v Watroba*, 193 Mich App 124, 126; 483 NW2d 441 (1992). The court may waive the "good cause" requirement if it concludes that there is "a significant possibility that the defendant is innocent." MCR 6.508(D). "Actual prejudice" means the defendant would have had a "reasonably likely chance of acquittal" following trial but for the alleged error, or the "irregularity was so offensive to the maintenance of a sound judicial

2

process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case." MCR 6.508(D)(3)(b)(i) and (iii).

If the procedural rules set forth above do not bar recovery, the court may proceed in any lawful manner and may apply the rules applicable to civil or criminal proceedings, as it deems appropriate. MCR 6.508(A). After reviewing the motion and response, if any, as well as the record, the court determines whether an evidentiary hearing is required. MCR 6.508(B). If the court decides an evidentiary hearing is not required, it may rule on the motion or allow oral argument, at its discretion. *Id.*

The Michigan Supreme Court has held that post conviction relief is reserved only for the "extraordinary case in which a conviction constitutes a miscarriage of justice." *People v Reed,* 449 Mich 375,381; 535 NW2d 469 (1995). The trial court's grant or denial of relief from judgment is reviewed for an abuse of discretion and the findings of fact supporting its ruling are reviewed for clear error. *McSwain,* 259 Mich App at 679-80.

## DISCUSSION

The court has conducted a preliminary review pursuant to MCR 6.504(B)(1). The court has examined the motion and its attachments, together with all files, records, and transcripts relating to the judgment under attack. It plainly appears from the face of the materials submitted that Defendant is not entitled to relief. MCR 6.504(B)(2). Therefore, there shall be no evidentiary hearing or other proceedings. MCR 6.504(B)(2).

In his pleadings, Defendant raises a myriad of issues which are expansive, intertwined, and at times opaque. It appears to this court, however, that Defendant is pursing what he describes as newly discovered evidence, *Brady* violations, prosecutorial misconduct, due process and other constitutional violations, insufficient or improper evidence, and ineffective assistance of both trial and appellate counsel. It appears that Defendant's claims are posited under MCR 6.508(D) (2) or (3). As it relates to MCR 6.508(D)(3), the court does not conclude that there is a significant possibility that Defendant is innocent, so the court will not waive the "good cause" requirement.

## I. "NEWLY DISCOVERED" EVIDENCE

Defendant presents as newly discovered evidence a letter and affidavit from expert accident reconstruction specialist Thomas Bereza. Mr. Bereza interviewed co-defendant Scottie Bernard Shaver and his trial counsel, and reviewed the case and investigative materials he received from counsel. He also had numerous telephone conversations with Scottie Shaver's family members. It is unclear whether Mr. Bereza reviewed the transcripts of either trial and it appears he did not interview witnesses. From what Mr. Bereza did review, he opines that Adrian Burnette was driving

3

a vehicle under the influence of alcohol when she struck and killed the deceased. He further opines that co-defendant Scottie Shaver was a passenger in the vehicle driven by Adrian Burnette.

Defendant asserts as his good cause under MCR 6.508(D)(3)(a) that this is newly discovered evidence entitling him to relief. He avers that this evidence meets the *Cress* Test and that "[i]f the jury would have heard this testimony, from someone trained to determine this type of event, it is very possible one juror would have accepted this evidence.... [m]aking a different result possible."

"For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) "the evidence itself, not merely its materiality, was newly discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and (4) "the new evidence makes a different result probable on retrial." *People v Cress,* 468 Mich 678, 692; 664 NW2d 174 (2003).

Defendant fails to explain how the evidence itself was newly discovered. Mr. Bereza reviewed materials he obtained from a co-defendant's trial counsel to form his opinion. Nothing in the letters or affidavits suggest the reviewed materials were unknown to Defendant prior to trial. In fact, it appears that they were known to the parties prior to trial. It cannot be said, therefore, that they are "newly discovered."

Defendant also fails to explain how he could not, using reasonable diligence, have discovered and produced the evidence at trial. Certainly, Defendant could have engaged an accident reconstructionist to review the case prior to trial and the record supports that the court was willing to grant expert witness fees. In fact, Defendant argues elsewhere in his pleading that defense counsel was inadequate for failing to hire an expert to investigate the case based on these materials. Defendant cannot logically argue that the evidence could not have been discovered using reasonable diligence and also argue that counsel was ineffective for failing to discover it.

As well, based on the other evidence produced at trial, and considering the anticipated value of Mr. Bereza's testimony once tested by cross-examination, Defendant cannot show that Mr. Bereza's opinion would make a different result probable on retrial. Defendant fails to present good cause and also fails to show actual prejudice pursuant to MCR 6.508(D)(3). For these reasons, and because the court finds the argument lacking, Defendant is not entitled to relief on this issue.

## II.    *BRADY* VIOLATION

Defendant also argues *Brady* violations, which appear to be based on allegations that police influenced a witness, Adrienne Burnette, to lie and that the government should have hired a particular type of expert to reconstruct the scene.

4

To establish a constitutional *Brady* violation, a defendant must establish that (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material. *Brady v Maryland*, 373 US 83; 83 SCt 1194; 10 LEd2d 215 (1963) *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014) citing *Strickler v Greene*, 527 US 263, 281-282; 119 SCt 1936; 144 LEd2d 286 (1999).

As to the testimony of Ms. Burnette, Defendant argues that the state withheld evidence when it coerced and influenced Adrienne Burnette into lying by leading Ms. Burnette with suggestive questioning. The court notes that although Defendant did not raise this issue on appeal, the Michigan Court of Appeals decided this issue in co-defendant Scottie Shaver's appeal. The Court noted:

> "We also reject Scottie's argument that Burnette's testimony was untrustworthy and should not have been believed. It is the responsibility of the finder of fact to make decisions about the credibility of witnesses and the probative value of evidence. . . . . Moreover, we must 'draw all reasonable inferences and make credibility choices in support of the jury verdict'. . . . Thus, Scottie's argument regarding the credibility of Burnette's testimony has no merit." *People v Shaver*, unpublished opinion per curiam of the Court of Appeals, issued September 12, 2013 (Docket Nos 305944, 305945, 306288) at 11-12 (internal citations omitted).

Defendant could have raised this issue on appeal but failed to do so. As such, Defendant is barred from relief unless he can establish both good cause and actual prejudice. MCR 6.508(D)(3). The court finds that Defendant has failed to do so. In addition, and as noted by the Court of Appeals, this argument lacks merit.

Defendant also improperly posits under his *Brady* allegations the argument that the prosecution committed misconduct and somehow withheld information when it "continued to lead and disrupt Ms. Burnettes's testimony when Detective Oppenheimer interrupted the trial attorney " during cross-examination of Ms. Burnette. Defendant appears to be referring to Detective Oppenheimer's reaction to Ms. Burnette's testimony. At one point during the testimony the detective began to spontaneously state the word "no" and then covered her mouth. This argument, best situated as a due process violation, is without merit and is also barred by MCR 6.508(D)(2). This ground for relief was decided against Defendant in a prior appeal and Defendant has not established or even alleged that a retroactive change in the law has undermined the prior decision.

Defendant also asserts as a *Brady* claim the government's failure to retain an appropriate accident reconstructionist. Law enforcement has no constitutional duty to hire a particular type of expert preferred by the defense. Also, there can be no *Brady* violation when the prosecution never possessed the evidence Defendant claims was withheld. There was simply no evidence suppressed by the prosecution. In addition, there are deficiencies in Mr. Bereza's opinion. As a result, Defendant has not established that accident reconstructionist testimony would be favorable or material. This claim is also without merit and Defendant has shown neither good cause nor actual prejudice. As such, Defendant is not entitled to relief on this issue.

## III. PROSECUTORIAL MISCONDUCT, DUE PROCESS AND RIGHT OF CONFRONTATION

Defendant raises various concerns relating to perceived prosecutorial misconduct and violations of his rights to due process and confrontation. He raises these under headings 4, 5, and 6 of his brief concerning the testimony of Adrienne Burnette, Adrian Travier, Bobby Walker, Michelle Ruiz, Detective Diane Oppenheimer, and the Forensic Pathologist. All of these claims could have been raised on appeal by this particular Defendant but were not. Thus, Defendant is barred from relief unless he can establish both good cause for failure to raise such grounds on appeal and actual prejudice.

### a. TESTIMONY OF ADRIENNE BURNETTE

Defendant raises a prosecutorial misconduct claim asserting that the prosecution intentionally introduced perjury when it called Adrienne Burnette to testify. Defendant argues that the prosecution blatantly misrepresented the facts concerning the reliability and/or credibility of Adrienne Burnette. Defendant cites no record evidence of this claim and the record does not, in fact, support it. Furthermore, co-defendant Scottie Shaver raised this issue in the Court of Appeals and the court rejected it, noting that "questions regarding the truthfulness of witnesses are questions for the finder of fact." *Shaver*, at 23. Defendant presents neither good cause nor actual prejudice and this issue is without merit.

### b. STATEMENTS OF IVORY SHAVER TO ADRIAN TRAVIER

Defendant argues that the prosecution committed misconduct when it introduced statements that Defendant made to Adrian Travier. The Court of Appeals addressed these statements in the co-defendant's appeal, concluding that the trial court did not err when it determined that Travier's testimony was admissible against Defendant under the hearsay exception for statements against penal interest, set forth in MRE 804(b)(3). "Ivory's statement to Travier satisfies the requirements for admission under MRE 804(b)(3), and is clearly admissible against Ivory." *Shaver* at 20. This court also finds that the record supports the trial court's decision to

admit Travier's statement against Defendant. As such, there was no prosecutorial misconduct and Defendant does not satisfy MCR 6.508(D)(3).

### c.    STATEMENTS OF BOBBY WALKER TO DETECTIVE OPPENHEIMER

Defendant makes a conclusory argument that he was denied due process of law when Detective Diane Oppenheimer was allowed to provide hearsay testimony as to what she was told by her confidential informant Bobby Walker Jr. Defendant also argues that his right to confrontation was violated when Mr. Walker was not produced for trial.

Defendant fails to support his argument with proper citations to the record. A review of the record reveals that there was no statement from Bobby Walker introduced into evidence at trial on direct examination of Detective Oppenheim. Rather, the information was provided to show its effect on law enforcement. TT, VII, 143-144. Accordingly, it was neither hearsay nor violative of Defendant's right of confrontation. Other statements were elicited on cross-examination in response to defense questioning about the confidential informant. This was clearly trial strategy designed to criticize the quality of the investigation. The court notes too that the prosecution had no obligation to produce Mr. Walker. Defendant has failed to establish entitlement to relief under MCR 6.508(D)(3) and this issue lacks merit.

### d.    STATEMENTS OF SHEVOLIER GILL TO MICHELLE RUIZ

Defendant argues improprieties in the use and admission of Michelle's Ruiz' testimony about statements made to her by co-defendant Shevolier Gill. The Court of Appeals addressed this issue in connection with co-defendant Scottie Shaver's appeal regarding the issue of severance. The Court noted:

> "Shevolier's testimony did not implicate any of the other defendants in the murder, and she denied making the statement about it being a trip to be there when someone is killed. Moreover, even the testimony that Shevolier allegedly made such a statement is not prejudicial to Scottie because it does not mention him or any other defendant." *Shaver* at 13.

The record supports the same conclusion for this Defendant. As such, Defendant has failed to establish entitlement to relief under MCR 6.508(D)(3) and the issue is without merit.

### e.    FORENSIC PATHOLOGIST

Defendant alleges perjury, fraud, and a denial of due process relating to the forensic pathology opinions. This argument stems from the change in initial findings as to the manner of

7

death from "undetermined" to "homicide."  The record does not support Defendant's claims and this issue was thoroughly vetted through cross-examination.  Defendant's argument is unavailing and Defendant fails to show entitlement to relief under MCR 6.508(D)(3).

## IV.   JURY TAMPERING

Defendant argues that he was denied an impartial jury due to jury tampering when an officer of the court was present during jury deliberations.  The record is devoid of any support for this argument and the court finds it to be without merit. Defendant has not established entitlement to relief under MCR 6.508(D)(3).

## V.   TRIAL COURT & PERJURED TESTIMONY

Defendant weaves throughout his motion the argument that the court failed to act *sua sponte* to suppress perjured testimony from three of the prosecution's witnesses: Adrienne Burnette, Adrian Travier, and the pathologist. Specifically, Defendant argues that the court should have suppressed testimony based on the credibility of all three witnesses due to inconsistencies between testimony at the first trial and what was testified to at the second trial.

"The jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact. Juries see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *People v. Wolfe*, 440 Mich 508, 514–15; 489 NW2d 748 (1992), amended (Oct. 9, 1992), citing *People v. Palmer*, 392 Mich. 370, 375–376, 220 N.W.2d 393 (1974).

The trial court did not err as alleged by Defendant.  It is the responsibility of the finder of fact to make decisions regarding the credibility of witnesses and the probative value of evidence. Defendant has not established entitlement to relief under MCR 6.805(D)(3) and the court finds this issue meritless.

## VI.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant's motion is scattered with assertions of ineffective assistance of trial counsel. He asserts ineffective assistance of appellate counsel as his reason for failing to raise these issues previously.  He brings these claims now under MCR 6.508(D)(3).   This court will attempt to address the various allegations.

In proving ineffective assistance of counsel, a defendant must overcome the presumption that the challenged action or inaction was a matter of strategy. *People v Leonard*, 224 Mich App 569, 592; 569 NW2d 663 (1997). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that

8

the [proceeding] cannot be relied on as having produced a just result." *Strickland v Washington*, 466 U.S. 668, 686; 104 S Ct 2052 (1984). "Reasonably effective assistance" is the standard. *Id.* "A convicted defendant making a claim of ineffective assistance must identify the acts or omission of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.

### a. FAILURE TO INVESTIGATE AND CALL OR CROSS EXAMINE KEY WITNESSES

Defendant claims that defense counsel, in a variety of ways, failed to properly investigate the circumstances surrounding the accident. Additionally, Defendant argues that defense counsel failed to impeach the prosecution's case and failed to call key witnesses.

An attorney has a duty to conduct a reasonable investigation, and failure to do so can amount to ineffective assistance of counsel. *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004). The investigation must be reasonably conducted to permit a strategic choice on what evidence to present. *Wiggins v Smith*, 539 US 510, 522-523; 123 SCt 2527; 156 LEd2d 471 (2003). However, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Davis (On Rehearing)*, 250 Mich App 357, 368; 649 NW2d 94 (2002). The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 312; 688 NW2d 308 (2004). A defense is substantial if it might have made a difference in the outcome of the trial. *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990); *LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

Here, the record reflects that trial counsel for the various defendants investigated Ms. Burnette's testimony and used the readily available evidence to impeach her credibility. TT, Vol 12, Pgs 82-170. This cross-examination included an admission from Burnette that she lied under oath. TT, Vol 12, Pgs 170-171.

As to the witnesses Jessie May Green, and Phillip Thorton who were not called, Defendant merely includes the names of these individuals in his motion and fails to provide any reason why he thinks counsel was ineffective for not investigating or calling them as witnesses. As such, Defendant has not established that counsel was ineffective in this regard.

As to witnesses Glover Dandridge, Evita Rivera, and LaTisha Hollings, who were not called, the court finds the decision not to call them to be a matter of trial strategy. As well, none of the witnesses' testimony would have been outcome determinative. The court notes that there is inherent risk in calling any witness, and counsel must engage in a risk benefit analysis of each witness and the minimal benefit of their proposed testimony. Furthermore, Defendant's portrayal

of their testimony at the first trial is not complete and omits testimony that would have been damaging to him had they been called at the second trial.

Defendant avers Mr. Dandridge testified there was no fight in the parking lot. However, Mr. Dandridge testified that there was a commotion in the parking lot and a group of 20 to 25 people on the north side of the parking lot, but that he could not see into the crowd. He also testified about the establishment's liquor license, and the importance of the liability attached to it. He testified it was important to get everyone off of the premises when the commotion started in the bar. He testified he knew the disturbance in the bar involved people fighting, pushing, and shoving, and knew about the commotion in the parking lot. However, he stated he never saw any of those involved in either incident nor did he see any actual punches thrown. He also stated he couldn't remember if Defendant, Scottie Shaver, Shevy Gill or Edward Foster were even at the bar that night. 2010 TT Vol. 7, 41-126.

Defendant asserts that Ms. Hollings testified that the victim was laying on her car after the altercation, and that she pushed the victim off her car in the parking lot and spoke to victim about the incident. While this is true, she only testified to this after being asked a leading question on cross-examination. On direct examination, she did not mention that she had any contact with the victim in the parking lot. She also testified that during the investigation she was extensively questioned about whether or not she may have hit the victim. She also testified as to having a poor memory of the evening, as she repeatedly answered, "I don't remember" to specific questions about the night. She also testified that when she went outside, she saw a big crowd in the parking lot and saw the Defendant, Scottie, and Shevy fighting and hitting the victim with fists in the center of the crowd. She testified she saw the victim fall to the ground more than once in the crowd. She was also asked about telling an officer the day after the incident that she didn't see any fight. 2010 TT Vol. 9, 164-199.

Ms. Holling's testimony conflicts with Defendant's portrayal of Mr. Dandridge's testimony. She clearly testified that there was an incident in the parking lot involving Defendant, Scottie, and Shevy fighting and hitting the victim. Mr. Dandridge didn't say there was "no fight" in the parking lot; he testified there was a commotion and a group of 20-25 people in the parking lot. His testimony is consistent with Ms. Holling's testimony, as he would not have been able to see into the middle of the crowd. He also testified he was watching the people due to liability concerns, which is consistent with the several witnesses who testified that there was a fight in the parking lot.

Contrary to Defendant's assertions, both Ms. Holling and Mr. Dandridge had motive to portray themselves in a positive light. Testimony that Mr. Dandridge watched the crowd break up and leave with no reason to call the police, and that Ms. Holling offered the victim a ride home after she was pushed off of her car, would insulate them from seeming indifferent to the violence

10

that night. As well, it is clear they would have given testimony that would be damaging to Defendant. Both would have generally corroborated Ms. Burnette's version of events, and Ms. Holling would have confirmed that Defendant was in the middle of the crowd fighting with the victim.

Ms. Rivera testified that she was wasted when the bar cleared and doesn't remember the night with clarity. She testified that she didn't know or recognize any of the Defendants. Her impeachment of Ms. Burnette was equivocal at best, as she testified that it was inaccurate but possible that she and Ms. Burnette went to the bar together that evening. She also corroborates that there was a big crowd in the parking lot. 2010 TT, Vol. 14, 26-47. While her testimony provides some impeachment value, it is clear that she would also confirm that there was a crowd in the parking lot in direct contradiction to Defendant's contention that there was no fight in the parking lot. Again, she also has a motive to avoid looking indifferent to the violence that night.

Additionally, Defendant argues that his trial counsel overlooked the medical examiner on cross-examination. The court reviewed the trial transcripts and notes that Dr. Palutke testified in this regard. The court also notes that Defendant's attorney did not cross examine Dr. Palutke as to the change in the opinion related to manner of death. However, cross-examination by other defense counsel thoroughly addressed this issue. Defendant has not provided the court with anything else that would have been revealed had his counsel also cross-examined Dr. Palutke. As such, the court finds this issue unavailing. The court notes too that counsel engaged the services of a forensic pathologist and a private investigator and advanced the same theories he advances in his present pleading.

In sum, the record supports that defense counsel's investigation of law and facts relevant to plausible options for the defense allowed him to make strategic decisions on what evidence to present. Defendant's counsel's strategic decisions regarding which witnesses to call and the extent of cross examination were not deficient. Defendant's arguments in this regard fail under MCR 6.508(D)(3) and are without merit.

### b. PERJURED TESTIMONY

Defendant argues defense counsel was ineffective for failing to move the court to suppress perjured testimony. The claim appears to be that testimony is perjured if it conflicts with other testimony. An attorney is not ineffective for failing to make a futile objection, *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998), nor is an attorney ineffective for failing to file a meritless motion, *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). Whether to object to a perceived impropriety is a matter of trial strategy. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Defendant provides no law in support of his argument that testimony should be excluded simply because it conflicts with other testimony. This would have been a futile motion and defense counsel is not ineffective for failing to make futile motions.

11

Defendant's argument on this claim fails to satisfy MCR 6.508(D)(3) and is without merit.

c.     **FELONY MURDER DOCTRINE**

Defendant alleges that felony murder is unconstitutional and that his counsel was ineffective for failing to raise this issue. He also avers that the trial court erred by failing to instruct on the law of malice, which he claims must be proven to obtain a felony murder conviction citing to *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980).

The Court in *Seals* addresses the issues raised by Defendant:

> "We adopt the holdings of the other jurisdictions. Michigan's felony-murder statute requires only proof that the murder occurred during the commission of a specified felony. There is no additional requirement that the defendant be *charged and convicted of* the underlying felony.... The decision in *Ream* reinforces that felony murder and the underlying felony are separate offenses. The state's inability to prosecute the predicate crime because of a time limitation has no effect on the question whether the predicate crime was actually committed.

> \* \* \*

> In considering defendant's argument that counsel was ineffective for failing to object to the first-degree murder charge having been brought on a predicate felony whose limitations period had expired, we would note that at the time of trial there was no binding authority to support defendant's argument. With this Court's resolution of the issue contrary to defendant's position and the fact that there was no prior established caselaw on which to base an objection, counsel cannot be said to have been ineffective for failing to object." *People v Seals*, 285 Mich App 1, 16, 18; 776 NW2d 314 (2009).

Again, Defendant fails to satisfy MCR 6.508(D)(3) and, pursuant to *Seals*, his argument is without merit.

d.     **GREAT WEIGHT OF THE EVIDENCE**

12

Defendant argues that defense counsel was ineffective for failing to challenge the great weight of the evidence. He asserts that Ms. Burnette's credibility was against the great weight of the evidence. For reasons already noted in this opinion, this argument lacks merit and Defendant is not entitled to relief under MCR 6.508(D)(3).

## VII. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Defendant asserts ineffective assistance of appellate counsel as the reason he failed to raise the above-mentioned issues on appeal. The court notes that appellate counsel for each of the three co-defendants presented a variety of arguments to the Court of Appeals, as evidenced by that court's opinion. As with trial counsel, "reasonably effective assistance" is the standard for appellate counsel. *Strickland*, 466 U.S. at 690. Appellate counsel need not raise every possible appellate claim. Appellate counsel may be selective as a matter of discretion and strategy when choosing which meritorious issues to raise on appeal. *Reed*, 449 Mich at 397.

The court has found meritless the issues Defendant claims appellate counsel should have raised. The court cannot fault appellate counsel for failure to present these non-meritorious issues to the Court of Appeals, and the decision not to do so falls squarely within appellate counsel's discretion. Defendant has not established that counsel's performance was deficient or prejudicial.

## CONCLUSION

For the reasons noted, Defendant's Motion for Relief from Judgment is DENIED.

IT IS SO ORDERED.

_____6/28/17_____
Dated

_____
KATHLEEN M. BRICKLEY, CIRCUIT JUDGE

## CERTIFICATE OF MAILING

I certify that on today's date a copy of the above was provided to the attorneys and/or defendant at the addresses above by first class ordinary mail.

Dated: 6/28/17

_____
Melissa Williams